UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICARDO TORRES,

    Plaintiff,

v.

SCOTT FRAUENHEIM,

    Defendant.

Case No. 16-cv-06054-WHO

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 14

## INTRODUCTION

Petitioner Ricardo Torres seeks federal habeas relief from a state court aggravated assault conviction on the grounds that the trial court's inclusion of certain jury instructions violated his due process and fair trial rights under the Fifth, Sixth, and Fourteenth Amendments. None of these claims has merit. Accordingly, the petition for habeas relief is DENIED.

## BACKGROUND

In 2012, Torres and an acquaintance, Manuel Rivera, attacked Aurelio Alvarado outside of a gay bar. The following factual background is taken from the order on direct appeal of the California Court of Appeal:

*The Prosecution's Case*

Ernesto Sanchez owned Franco's Norma Jean's Club, a gay bar located in Castroville. Sanchez was working at the bar on May 20, 2012. At approximately 1:45 a.m., he began to close the bar. He turned on the lights and heard a noise that sounded like fighting towards the back of the dance floor. He saw two suspects, who he later identified as Torres and Rivera, "saying bad words" and yelling, using the term "faggot." Sanchez immediately called 911 and walked over. He saw a bar patron, Niko, on the floor. Sanchez did not see Torres or Rivera hit Niko. However, both defendants were standing over him, saying obscenities. Sanchez said he heard the defendants say "faggot" several times. Sanchez managed to get Torres and Rivera out of the club. As he was being escorted out, Torres warned Sanchez that he "better not be calling the cops," otherwise he would "burn down [his] place."

Sanchez returned to the dining room of the bar to call 911 again. At that point, he saw Torres and Rivera hitting and kicking somebody outside the bar. Sanchez saw Torres kick the victim, later identified as Aurelio Alvarado, in the head. He also heard Torres and Rivera repeatedly call Alvarado a "fucking faggot." Torres and Rivera ran off after the police arrived. When they were apprehended, Sanchez identified them from a photo lineup.

Cecilia Guevara was employed as a security officer at the bar that night. She saw Alvarado being beaten outside the bar by the defendants. Guevara said she did not hear Rivera say anything, but she heard Torres say "faggot" as he was hitting Alvarado. She described Rivera as being "on his knees having [Alvarado] by the neck punching him." She saw Rivera hit Alvarado a minimum of three times. At that point, Alvarado was on the floor.

Guevara returned to the bar to tell Sanchez to call the police. Sanchez told Guevara he was already on the phone with the police, so she went back outside. At that point, she saw Torres kick the victim in the head. Guevara asserted that it looked like Alvarado blacked out after the kick. She heard Torres call Alvarado a "faggot." Afterwards, Guevara attempted to help Alvarado sit up. She said Alvarado seemed disoriented. Torres threatened Guevara and several other bystanders.

Veronica Lara was at the bar that night with her partner, Griselda Martinez. Lara and Martinez were leaving the bar when they heard a commotion. They witnessed the assault on Alvarado, and walked toward the attackers to get them to stop. Lara identified Rivera as the individual who was hitting Alvarado. She also saw Torres kick Alvarado in the head. After the kick, Alvarado's eyes went white and he fell on the floor. Martinez saw Torres kicking Alvarado unconscious. She also heard Torres call Alvarado a "fucking fag" afterwards.

Rene Gonzalez Corona, who was in a relationship with Alvarado, was at the bar with him the night of the attack. Corona and Alvarado left the bar after the last call. They ran into Torres and Rivera outside. Rivera asked Corona and Alvarado, "What's your problem?" Corona thought he looked angry. Rivera asked Corona why he "grabbed his butt at the bar." Corona did not know what Rivera was talking about. Corona moved aside, and Rivera responded, "Well, then, it's not your problem." Rivera then grabbed Alvarado and began beating him. Rivera punched Alvarado in the face multiple times, grabbing him in a choking fashion. Alvarado eventually fell to the ground. Corona then saw Torres kick him in the head once. Corona heard Torres call Alvarado a "faggot."

Monterey County Sheriff's Deputy Jose Sheppy responded to the call from the bar that night. He made contact with Rivera after witnesses identified him in a group walking along the street. Rivera took off his hat and threw it on the ground when Sheppy approached. He told Sheppy he had been assaulted in front of the bar. Witnesses told Sheppy that there was another suspect walking with another group of individuals across the street.

Monterey County Sheriff's Deputy Chris Brown also testified. He was also dispatched to the bar the night of the incident. He made contact with Deputy Sheppy, who had already detained Rivera. Sheppy told Brown that there was another suspect, later identified to be Torres, across the street. Brown conducted an infield show-up of Rivera and Torres with Corona. Corona identified both of them.

Monterey County District Attorney's Investigator Roy Diaz testified that he showed the photo lineup to Sanchez. Sanchez identified Torres, and chose two

2

photos that he identified as Rivera. Guevara identified both Torres and Rivera.

Alvarado also testified, explaining that he went to the bar with Corona that night. As they were leaving, they noticed two individuals outside, who he later identified as Torres and Rivera. Alvarado said that because of his limited English skills, he was not completely sure what Torres and Rivera said to him. However, he knew that they were angry about an incident in the bar where someone had touched them inappropriately. Alvarado did not remember anyone saying anything about his sexual orientation. He remembered getting hit by Rivera multiple times. He did not remember how many punches there were and could not recall being kicked. A few days after the incident, Alvarado said he could hear echoes and began experiencing headaches. He went to the hospital due to his worsening symptoms.

*The Defense's Case*

Vickie Rodriguez, an investigator for the public defender's office, testified on behalf of the defense. She interviewed Alvarado about the assault. She said Alvarado told her that he could not identify his assailants, but Corona and Guevara had told him Torres and Rivera were the attackers. Alvarado said he was told that if he did not identify the two attackers, they would be released by the police.

Rodriguez also interviewed Sanchez. She showed Sanchez photographs of Torres and Rivera. Rodriguez asserted that Sanchez did not identify Rivera as the "short attacker" based on a lineup of photographs.

Several of Rivera's friends testified that they had been with Rivera that night for a bachelor party. One friend said he had never seen Rivera act in a homophobic manner and described him as a calm, peaceful person.

The defense recalled Deputy Brown, who interviewed Alvarado that night. Brown said Alvarado told him he could not remember anything after he walked towards Corona that night, since he blacked out. He did not give Brown a description of his attackers.

Rivera testified on his own behalf. He expressed disapproval for hate crimes on homosexual individuals and said he had family members who were gay. He denied attacking Alvarado. He confirmed he went out for a bachelor party the night of the assault. Rivera said he went to Mike's Bar, leaving near closing time. He was attacked outside as he left. After the attack, he saw crowds of people pointing at him. Rivera believed the crowd had assaulted him. He found a bump on his head that had scabbed over the morning after the attack. Rivera identified Torres as an acquaintance.

The defense called Officer Sheppy, who testified that he came into contact with Rivera and Torres after he responded to the call about the attack in front of the bar. Rivera told Sheppy that he had been assaulted. Torres did not look like he had been in a fight; there was no blood on his clothing or any visible injuries on his body.

Respondent's Answer to the Order to Show Cause ("Ans."), Ex. A, Unpublished Opinion of the California Court of Appeal ("CCA Op.") at 3–6 [Dkt. No. 10-3].

On August 16, 2013, a California Superior Court, County of Monterey, jury convicted Torres of assault by means of force likely to produce great bodily injury (Cal. Pen. Code §

245(a)(4)), with special enhancement findings that: (i) Torres personally inflicted great bodily injury (Cal. Pen. Code § 12022.7(a)); and (ii) the assault was a hate crime (Cal. Pen. Code § 422.75(a)). Petition for Writ of Habeas Corpus ("Pet.") at 8 [Dkt. No. 1]. In May of 2015, the California Court of Appeal affirmed the judgment, finding Torres' jury instruction claims without merit. *See* CCA Op. In June 2015, Torres filed a petition for review with the California Supreme Court. Pet. at 9. On July 22, 2015, the California Supreme Court denied review. *Id.* This federal habeas petition followed.

As grounds for federal habeas relief, Torres alleges that the trial court violated his due process and fair trial rights under the Fifth, Sixth, and Fourteenth Amendments, by instructing the jury with CALCRIM Nos. 3160, 370, and 1354. Pet. at 9.

## LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

4

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

**I. CALCRIM NO. 3160**

Torres asserts that the trial court committed prejudicial error when it instructed the jury with CALCRIM No. 3160, as two prerequisites for the instruction were not met. Pet. at 26; Traverse to Respondent's Answer to Petition for Writ of Habeas Corpus ("Rep.") at 9 [Dkt. No. 11]. To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the deficient instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988).

CALCRIM No. 3160 outlines the group beating exception to the enhancement for personally inflicting great bodily injury under California Penal Code section 12022.7(a). The trial court instructed the jury on CALCRIM No. 3160 as follows:

> If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proved the additional allegation that the defendant personally inflicted great bodily injury on Aurelio Alvarado in the commission of that crime.
>
> You must decide whether the People have proved this allegation and return a separate finding for each defendant.
>
> Great bodily injury, again, means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.
>
> If you conclude that more than one person assaulted Aurelio Alvarado and you cannot decide which person caused which injury, you may conclude that the

5

> defendant personally inflicted great bodily injury on Aurelio Alvarado if the People have proved that, one, two or more people acting at the same time assaulted Aurelio Alvarado and inflicted great bodily injury on him.
>
> Two, the defendant personally used physical force on Aurelio Alvarado during the group assault;
>
> And 3A, the amount or type of physical force the defendant used on Aurelio Alvarado was enough that it alone could have caused Aurelio Alvarado to suffer great bodily injury.
>
> Or, 3B, the physical force that the defendant use [sic] on Aurelio Alvarado was sufficient in combination with the force used by the others to cause Aurelio Alvarado to suffer great bodily injury.
>
> The defendant must have applied substantial force to Aurelio Alvarado. If that force could not have caused or contributed to the great bodily injury, then it was not substantial.
>
> The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved.

Ans., Ex. D, Reporter's Transcript ("RT") at 2433–34 [Dkt. No. 10-12]; *cf.* Ans., Ex. C, Clerk's Transcript ("CT") at 411 [Dkt. No. 10-6].

Torres asserts that instructing the jury with CALCRIM No. 3160 was an unreasonable application given the facts of his case. Specifically, Torres argues that in order for a CALCRIM No. 3160 instruction to be proper, two purported assailants must have assaulted a victim at the same time, and a determination as to which assailant inflicted which injury must be impossible to make. Pet. at 26; Rep. at 9. Here, Torres claims that the evidence indicates that the assailants' attacks on Alvarado were committed sequentially and thus not at the same time, and that both assailants inflicted injuries on different parts of Alvarado's body, which makes connecting injury to perpetrator achievable. Pet. at 28–29; Rep. at 10. In opposition, respondent asserts that, contrary to Torres' claims, the evidence shows that Torres and Rivera were acting at the same time, and that it is unclear as to the specific events that caused Alvarado's injuries. Respondent's Memorandum of Points and Authorities in Support of the Answer ("Memo") at 14 [Dkt. No. 10-1]. Respondent further argues that Torres fails to show either how the jury misapplied CALCRIM No. 3160, or how the challenged instruction lowered the prosecution's burden of proof. *Id.* at 15.

As to Torres' "same time" argument, the California Court of Appeal provided:

> Torres seems to argue that the group beating exception is inapplicable because

there were two separate assaults: first, the assault by Rivera when he punched
Alvarado in the head, and second, the assault by Torres when he kicked Alvarado.
Although witnesses were able to discern that Rivera first punched Alvarado and
Torres later kicked him, the testimony supports the prosecution's theory that both
perpetrators attacked Alvarado as part of the same ongoing attack. . . . Sequentially,
Rivera punched Alvarado first, but witnesses asserted he was joined in the assault
by Torres, who kicked Alvarado when he was on the ground.

CCA Op. at 11–12.

I find that the state appellate court's rejection of Torres' CALCRIM No. 3160 instructional error claim was reasonable and is therefore entitled to deference under AEDPA. In *People v. Modiri*, the California Supreme Court held that the group beating theory is applicable in cases where a defendant "*joins* [another] in actually beating and harming the victim." 39 Cal.4th 481, 495 (Cal. 2006) (emphasis added). Though Torres would have me believe that two distinct attacks occurred, the evidence shows that the attack was a joint and coordinated effort. Just as joining another in a relay race does not necessarily equate to running at the same time, joining another in a group beating does not require each perpetrator's respective blows to land upon a victim simultaneously. It is sufficient to say that, here, both acquaintances joined one another in one attack upon the same victim, with their respective blows occurring within an extremely short period of one another.

In regards to Torres' "identifiable injury" claim, the California Court of Appeal further found:

[E]ven if the jury was able to determine that Torres kicked Alvarado or that Rivera
punched him, this would still be a situation where the jury may be unable to
ascertain which defendant caused Alvarado's injuries. Alvarado said he suffered
from headaches and began hearing echoes as a result of the injuries to his head.
Witnesses testified that both Torres' and Rivera's attacks—the punches and the
kick—were directed toward Alvarado's head. Therefore, it may not have been
clear to the jury which defendant caused the harm.

CCA Op. at 12.

I find the state appellate court's assessment entirely reasonable and consistent with the evidence of record. At least four eyewitnesses testified at trial that they saw Torres kick Alvarado in the head, which is where Rivera's punches landed. As both assailants' blows landed upon Alvarado's face and head, it is objectively reasonable that a jury would be unable to determine which assailant's contact resulted in Alvarado's subsequent headaches and hearing of echoes. In

7

1    short, Torres' "identifiable injury" contention is without merit.

2    The California Court of Appeal lastly found that CALCRIM No. 3160 is a correct statement of law. CCA Op. at 12. This Court is bound by a state court's determination that the trial court's instruction correctly stated the law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Moreover, if the jurors did not find the instruction's factual requirements true, they would presumably have ignored the instruction. The instruction itself specified as much, as it contained two predicate conditions that preceded its acceptance. Specifically, the trial court provided: "*If you conclude that more than one person assaulted Aurelio Alvarado and you cannot decide which person caused which injury*, you may conclude that the defendant personally inflicted great bodily injury on Aurelio Alvarado *if the People have proved that, one, two or more people acting at the same time* assaulted Aurelio Alvarado and inflicted great bodily injury on him." RT at 2433–34. There is nothing to suggest that the jury misunderstood these requirements.

In sum, because the state appellate court's determination was reasonable, and not contrary to clearly established Supreme Court precedent, it is entitled to deference under AEDPA. Accordingly, habeas relief is not warranted here and Torres' CALCRIM No. 3160 claims are DENIED.

## II.   CALCRIM NOS. 370 AND 1354

Torres asserts that the trial court committed prejudicial error when it instructed the jury with CALCRIM Nos. 370 and 1354, because the two instructions, when read in conjunction, are in conflict with one another. Pet. at 31; Rep. at 13. The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. U.S. Const. amend. XIV; *see In re Winship*, 397 U.S. 358, 364 (1970). Any jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972).

CALCRIM No. 370 provides that motive is not a required element of finding a defendant guilty of assault with force likely to produce great bodily injury (Count 1). The trial court instructed the jury on CALCRIM No. 370 as follows:

8

> The People are not required to prove that the defendant had a motive to commit the crime charged in Count 1, assault with force likely to produce great bodily injury.
>
> In reaching your verdict you may, however, consider whether the defendant had a motive. Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty.
>
> Let me read that again. I'm not sure I read that correctly.
>
> Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty.

RT at 2429; *cf.* CT at 405.

If the jury finds defendant guilty of assault with force likely to produce great bodily injury, CALCRIM No. 1354 provides that, in regards to the special enhancement finding that the assault was a hate crime, a finding of motive is required. The trial court instructed the jury on CALCRIM No. 1354 as follows:

> If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proven the additional allegation that the crime committed by the defendant was a hate crime. To prove this allegation the People must prove that the defendant committed that crime in whole or in part because of the alleged victim's actual or perceived sexual orientation, or association with a person or group having this actual or perceived characteristic.
>
> The defendant acted in whole or in part because of the actual or perceived characteristic of the victim if the defendant was biased against the victim based on the victim's actual or perceived sexual orientation or association with a person or group with this actual or perceived characteristic; and two, the bias motivation caused the defendant to commit the illegal acts.

RT at 2432; *cf.* CT at 410.

Torres argues that, in the way CALCRIM No. 370 and CALCRIM No. 1354 were read, it was not clear that CALCRIM No. 370 only applied to the underlying crime (assault), and that CALCRIM No. 1354 applied only to the assault motived by hate enhancement. Pet. at 31; Rep. at 13. Specifically, Torres claims that CALCRIM No. 1354, "while initially differentiating between a crime and an 'additional allegation,' then includes the sentence[:] "To prove this *allegation*, the People must prove that the defendant committed *that crime* in whole or in part because of the alleged victim's actual or perceived sexual orientation." *Id.*; *see also* RT at 2432. According to Torres, "[i]t is clear that with the ambiguity of using the word enhancement and crime the jury could have determined that [Torres] committed a hate crime even without proof of a motive to

9

commit the offense." Pet. at 31; Rep. at 13. In opposition, respondent argues that Torres' CALCRIM Nos. 370 and 1354 contentions are forfeited, because the state appellate court found as much. Memo at 18. Respondent further asserts that, even if Torres' CALCRIM Nos. 370 and 1354 claims are not forfeited, the state court reasonably found that the wording of the respective instructions was neither confusing nor ambiguous. *Id.* at 19.

In rejecting Torres' CALCRIM Nos. 370 and 1354 claims, the California Court of Appeal provided:

> Defendants argue that when these two instructions are given together, it is reasonably likely the jurors may have misunderstood and misapplied the law, finding that they committed a hate crime without proof of motive to commit the offense. The People claim this contention is forfeited, because Rivera's trial counsel requested clarification of CALCRIM No. 370, which the court agreed to modify. After the modification, which specified that CALCRIM No. 370 applied only as to count 1, assault with force likely to produce great bodily injury, none of the defendants objected.
>
> "The long-standing general rule is that the failure to request clarification of an instruction that is otherwise a correct statement of law forfeits an appellate claim of error based upon the instruction given." (*People v. Rundle* (2008) 43 Cal.4th 76, 151, disapproved of on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Here, Rivera objected to the use of CALCRIM No. 370, received a modification of the instruction, and did not make any further objections or request other clarifying instructions. Similarly, Torres did not object to the initial instruction or to the subsequent modification. Accordingly, we conclude that both defendants have forfeited this contention on appeal.
>
> Furthermore, even if we were to consider the claim on its merits, we would find the court's instruction was not erroneous or prejudicial. . . .
>
> [T]he other instructions given to the jury clearly distinguish between a crime and an enhancement allegation. The court instructed the jury, "The defendants are charged in Count 1 with assault with force likely to produce great bodily injury in violation of Penal Code [s]ection 245[, subdivision] (a)(4). [¶] To prove that a defendant is guilty of *this crime* . . . ." (Italics added.) It seems reasonably clear from the instructions that the jury was to apply the principles outlined in CALCRIM No. 370 only as to the crime charged in count 1, assault.
>
> Defendants, however, claim the language of CALCRIM No. 1354 lends itself to ambiguity, because it initially differentiates between the underlying "crime" and the "additional allegation," but then includes the sentence that "[t]o prove this *allegation* the People must prove that the defendant committed *that crime* in whole or in part because of the alleged victim's actual or perceived sexual orientation . . . ." (Italics added.) We fail to see how the wording of the instruction is ambiguous or confusing. It plainly instructs the jury that to prove the additional *allegation* that the crime committed was a hate crime, the People must prove that the underlying crime was committed in whole or in part because of the victim's perceived or actual sexual orientation. The "crime" referenced in the latter sentence refers to the crime of assault.

CCA Op. at 16–17.

Because the state court concluded that Torres forfeited his claim by failing to object to the ambiguity of the trial instruction before the trial court, the Court cannot reach this claim in federal habeas unless the instructional error resulted in a fundamental miscarriage of justice. Like the California Court of Appeal, I do not see how the wording of either CALCRIM No. 370 or 1354 is ambiguous, confusing, or prejudicial. As stated above, challenged instructions may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. Torres has failed to show either how the jury misapplied CALCRIM Nos. 370 and 1354, or how the challenged instructions lowered the prosecution's burden of proof. The state appellate court's rejection of these claims was reasonable and is entitled to deference under AEDPA. Accordingly, habeas relief is not warranted here, and Torres' CALCRIM Nos. 370 and 1354 claims are DENIED.

**CONCLUSION**

The California Court of Appeal's adjudication of Torres' claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, the petition is DENIED.

A certificate of appealability will not issue as reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Torres may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: March 2, 2018

William H. Orrick
United States District Judge